M8MKRAH1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                 v.                          20 CR 653(RA)

5    DJONIBEK RAHMANKULOV,

6                    Defendant.
                                             Trial
7    ------------------------------x

8                                            New York, N.Y.
                                             August 22, 2022
9                                            10:17 a.m.

10   Before:

11
                          HON. RONNIE ABRAMS,
12
                                             District Judge
13                                            -and a Jury-

14                          APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  THANE REHN
17        CECILIA VOGEL
          SAMUEL RAYMOND
18        Assistant United States Attorneys

19   JOSEPH MURRAY
          Attorney for Defendant
20

21   NERLANDE PIERRE, USAO Paralegal
     MUHITDIN AHUNHODJAEV, Uzbek Interpreter
22   SANJAR BABADJANOV, Uzbek Interpreter

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.

                          (212) 805-0300

1          (Case called)

2          MR. REHN:  Good morning, your Honor.  Thane Rehn,

3    Cecilia Vogel, and Samuel Raymond, for the United States.  And

4    we're joined with Nerlande Pierre, our paralegal, and Ali

5    Ahmaz-Strickland, from the FBI.

6          THE COURT:  Good morning, all.

7          MR. MURRAY:  And for the defense, Joseph Murray, and

8    my client, Mr. Djonibek Rahmankulov.

9          And, your Honor, I have his family in the front row.

10   Is that okay?  I didn't know where to put them with regards to

11   jury selection.

12         THE COURT:  They are welcome.

13         I have to say, I can't tell you how frustrated I am.

14   If you're going to practice in this court, Mr. Murray, you have

15   to be prepared to do so.

16         MR. MURRAY:  Yes.

17         THE COURT:  I already put this trial off one week to

18   accommodate you and to ensure that you have an adequate amount

19   of time to prepare, and you indicated that that was totally

20   acceptable.

21         I'm beyond frustrated.  I don't think you realize how

22   complicated this is to figure out, particularly with the

23   situation in which we need interpreters and what I indicated

24   previously, that in light of this big upcoming death penalty

25   trial, we have a derth of qualified Uzbek interpreters, which

M8MKRAH1

1    makes it incredibly difficult to plan, together with the issues

2    that we've had getting jury pools.  So I just want to just

3    start with my frustration.

4            I also don't understand why it is that it took you

5    until Sunday evening to come to this conclusion, when you got

6    many of these materials days before.  I'm happy to hear you

7    out, but...

8            MR. MURRAY:  Thank you, Judge.  I appreciate it.

9            I share your frustration, Judge.  And to be

10   perfectly --

11           THE COURT:  No, I'm frustrated, in good part, with

12   you.

13           MR. MURRAY:  I understand that.

14           I share in your frustration because what my actions

15   are responding to the government's actions.  Judge, we're all

16   attorneys and officers of the Court.  I have never had a

17   problem working with other attorneys.  I'm very cordial.  You

18   have seen, and you will see throughout this trial, all the

19   stipulations, the things we've agreed on.  What was so

20   offensive to me, Judge, is we had a pretrial conference on the

21   16th.  We were asked and invited to come in to do our sound

22   check before the pretrial conference.  At that time, the

23   government presented me with some other stipulations that we

24   were going to sign, that we had discussed over the last few

25   days, and at no time did they tell me they had two subpoenas

M8MKRAH1

1    they were holding onto and they were going to wait, and they

2    waited throughout our very comprehensive pretrial conferencing,

3    and they failed to produce them or give me any warning

4    whatsoever they were going to now spring this on me at the last

5    minute.

6           And, in my opinion, Judge, this was done purposely

7    because my client indicated he's going to testify, and that

8    scares them, and they don't want him to testify.  And I'm so

9    shocked because of the nature of our relationship throughout

10   this case has been wonderful.  But to hold back and wait until

11   you adjourn our pretrial conference, I was shocked — shocked by

12   that.

13          And then looking at the substance of it, it's

14   essentially all stuff they could have asked for months ago.

15   They have been saying that my client has operated shell

16   companies throughout this case.  So you wait until after the

17   pretrial conference because you know the judge is going to

18   attack me because I'm now objecting to this, and I now have to

19   go through all this material.  I have a client who wants to

20   testify, he's been dying to tell his story, but I have to do my

21   due diligence and look at all the evidence, and prepare him to

22   testify.

23          And when I get something like this, on the eve of

24   trial, after our pretrial conference, it frustrated the heck

25   out of me, Judge.

M8MKRAH1

1      THE COURT:  So, just to be clear, it's not that the

2   discovery, the 300 and some odd pages of new discovery, or the

3   additional 3500 material that's presenting a problem for you;

4   it's the if and when subpoena and the additional subpoena,

5   that's what's --

6      MR. MURRAY:  No, that's the first step.  Then I go

7   back to my office, and I find out that the following day — it

8   wasn't even that day — the following day, there was a FedEx of

9   a hard drive that I thought was a phone subpoena.  The reason

10   why I thought it was is -- a phone extraction -- because in

11   their discovery letter to me, they indicated certain files that

12   they're going to use.  One, as we've discussed in a previous

13   conference, was a video that had an audio recording of my

14   client on it.  That's where that was taken from.

15      Unless I'm wrong -- feel free to correct me -- that's

16   where that video came from.

17      MR. REHN:  No, that's incorrect.  This is a copy of an

18   iCloud account for a different witness.  It doesn't have any

19   materials that the government would be using at trial.

20      MR. MURRAY:  Okay.

21      So, I was under the impression that this is now, the

22   hard drive that they're turning over, is where they got this

23   video that they're going to use to -- whatever they're going to

24   use it for, to impeach my client.

25      THE COURT:  So now that you have the clarification you

1    just got, does that affect anything on your end?

2              MR. MURRAY:  Here's where I ran into trouble, and,

3    yes, on my end, yes, but, Judge, let me just explain.  I got

4    this hard drive, I plugged it in, I had my client in the

5    office, and we're going through it.  I said, look, we don't

6    have time to go through this, we have to prepare, there's 3500

7    material I have to get you to look at and comment on, and he

8    sees it, and he goes, no, I have a right to see this, and it's

9    all in Russian or Uzbek.  I can't read it; only he can read it.

10             So I can't say if there's nothing relevant or valuable

11   on that drive; only my client can tell me that.  And he said to

12   me -- and I felt bad at that moment because I was trying to

13   tell him, don't worry about it, it means nothing, let's focus

14   on this.  And he said, I have a right to see this, and wanted

15   to see this.  What do I do with that, Judge?

16             THE COURT:  Does the government want to be heard?

17             MR. REHN:  Your Honor, on that particular point, with

18   respect to the iCloud warrant, this is about eight and a half

19   gigabytes of data, which, as far as we can tell, primarily

20   consists of personal photos and videos.  There's very limited

21   number of text messages --

22             THE COURT:  Of the witness?

23             MR. REHN:  Of a cooperating witness.

24             Our review indicates there's nothing at all whatsoever

25   about the defendant, and there does not appear to be anything

M8MKRAH1

1    relevant to the witness' testimony or the witness', in fact,

2    criminal activity.  It's really just mostly personal materials,

3    as far as we can tell.

4         We produced it in an abundance of caution.  We don't

5    believe there's anything that needs to be reviewed.  We are

6    willing to facilitate any searches that the defense requests,

7    if they believe there's something that needs to be reviewed,

8    but we don't think it's a volume of material that would warrant

9    any sort of adjournment of this trial, given the fact that it

10   arguably didn't even need to be produced in the first instance,

11   and there's no reason to believe, and the defense has offered

12   no reason to believe, that there's anything that needs to be

13   reviewed on this warrant.

14        MR. MURRAY:  Judge, just in furtherance of that, I

15   believe them.  I spoke to Ms. Vogel when I got this drive about

16   getting the password or whatever, getting into it, and she

17   reported the same thing — it's really irrelevant, it was just a

18   couple of files that we took off there, and that's why I

19   thought it was the video file, Ms. Vogel, that we were talking

20   about.  In any event, I take you at your word, and I tried to

21   explain that to my client, and he said, no, I want to read

22   this, it's in Russian.  He wanted to see all these text

23   messages.

24        So, I said, look, we have to focus on this 3500

25   material, which is so important, cooperation agreements, and I

1    felt bad at that moment, Judge, because this is his life, this

2    is his case.  I go home every night, I don't have to worry

3    about it.  And he wants to see that material.

4         Judge, the other thing, and the third thing, and I

5    will just end it at that, is when we changed the modification

6    that my client is now under home confinement at the last couple

7    of weeks now, that really hurt us because, for some reason, I

8    later learned the pretrial officer was on vacation.  I sent her

9    an email --

10         THE COURT:  But I indicated that I would help you to

11    facilitate anything to ensure that it didn't affect trial

12    preparation.  I told you that.  And you waited until the Sunday

13    evening before trial to raise this for the first time?  I

14    indicated that I would help you facilitate that in any way.

15         MR. MURRAY:  Judge, I'm at a loss here because when

16    all of these things hit me at once, I threw my hands up and

17    said I have to say something — I have to say something.  My

18    client is now --

19         THE COURT:  I'm asking you why you didn't say

20    something earlier if that was causing a problem --

21         MR. MURRAY:  I --

22         THE COURT:  -- and explain to me exactly how it was

23    causing a problem.

24         MR. MURRAY:  I got no response.  As a matter of fact,

25    the company, there's like a contractor --

M8MKRAH1

1          THE COURT:  But you reached out to my chambers, and my
2    chambers indicated to you that if you had any issues getting in
3    touch with pretrial, that we would act immediately.  Did we
4    not?
5          MR. MURRAY:  Judge --
6          THE COURT:  Did we not respond to you?
7          MR. MURRAY:  I'm responding to you.  I reached out to
8    your chambers, and --
9          THE COURT:  We indicated that we would help you in any
10    way if you wanted help.
11          MR. MURRAY:  Yes, she indicated to put up a letter,
12    and you would help me.
13          THE COURT:  Yes.
14          MR. MURRAY:  I didn't want to do that because I didn't
15    know if this officer was on vacation or what the issue was, so
16    I tried not to put it out there.  And I reached out --
17          THE COURT:  We specifically told you if you need help,
18    write a letter, put it on the docket, because things have to be
19    transparent, and I would assist you.  And you chose not to do
20    that, which suggested to me that there was no longer a problem.
21          MR. MURRAY:  Okay, Judge.  Well, I don't know where
22    else to go.  But when all of these things hit me at once in the
23    last week, when I'm trying to prepare for trial -- you know,
24    you gave me this time, and I remember you saying to me, you can
25    focus on nothing but this, but I kept getting more and more and

M8MKRAH1

1    more material.

2             THE COURT:  So let's walk through exactly what you've

3    gotten.

4             So you got what the government indicates is 368 pages

5    of additional discovery.

6             MR. MURRAY:  I have not gone through it, Judge.  I

7    just see --

8             THE COURT:  Okay.  368 pages, so there's that, right?

9             And then how much 3500 material is there that you have

10   to review?

11            MR. MURRAY:  There's still a lot.  I didn't --

12            THE COURT:  I'm going to turn to the government.

13            Let's talk about exactly what needs to be reviewed at

14   this point that had not been produced before, and then we'll

15   talk separately about the subpoenas.

16            MR. REHN:  Your Honor, with respect to the recent 3500

17   production, it is a small number of pages of notes of recent

18   meetings that have taken place.

19            THE COURT:  When you say "small," what does that mean?

20            MR. REHN:  I hesitate to say less than a hundred

21   pages, but it's not substantially more than that.  We can try

22   to figure out an exact number by looking at -- it's not

23   numbered — paginated — in the way that is easy to calculate,

24   but, again, these are typically meetings where there's one or

25   two pages of notes, there have been maybe 20 meetings over the

M8MKRAH1

1   last two weeks.  So that's what we're dealing with there.

2            THE COURT:  Okay.  So let's say approximately -- less

3   than 500 pages, new pages, of material that needs to be

4   reviewed.  So 500 pages, so we have that.

5            And then tell me, what is the office's practice as to

6   when -- if and when subpoenas are served on defendants, and

7   then walk me through the separate subpoena, which I understood

8   is not an extra subpoena, correct?

9            MR. REHN:  That's correct.

10           THE COURT:  And why you served it so late.

11           MR. REHN:  Your Honor, it's a trial subpoena.  So we

12   served it in the lead-up to trial in response to the statements

13   that were made by the defense in their response to our motions

14   in limine, which indicated, and I quote, "Legitimate business

15   dealings with these pharmacies."  It's certainly the case that,

16   in the government's experience, when people have legitimate

17   business dealings, there's some sort of documentation, and such

18   documentation would have been highly relevant to the issues at

19   trial, and so we made a decision to subpoena those companies

20   for any materials related to that.

21           With respect to the if, as, and when subpoena, I think

22   the typical practice is to serve it upon notice that the

23   defendant intends to testify.  Again --

24           THE COURT:  And he indicated that on the 4th, when we

25   had that conference.

M8MKRAH1

1         MR. REHN:  That's correct, your Honor.

2         THE COURT:  At least he indicated that to me.  He may

3    have indicated that to you prior to that.

4         MR. REHN:  That's correct, there had been previous

5    discussion about whether the defendant might testify.  I

6    believe he mentioned it on the 4th.  It was also in the

7    opposition to the defense -- to the motions in limine, which I

8    think was filed on the 9th, and we next served a subpoena the

9    next time we saw the defendant in person on the 16th at the

10   pretrial conference.  Again, I think that's within the office's

11   normal practice.  I think it's an appropriate amount of time.

12   We cited a case to the Court of a recent trial.  There was a

13   trial in which a subpoena was actually served mid-trial upon

14   the defendant upon notice that the defendant intended to

15   testify.  It's obviously appropriate to subpoena any witness in

16   the event that you learn that they are planning to testify for

17   potential impeachment materials, and that's what we did here.

18   And we have not heard any indication from the defense that

19   there's actually some burdensome amount of materials to

20   produce.

21         As soon as the defense told us that he was concerned

22   about these subpoenas, which happened on Friday evening, I

23   immediately responded and said we're happy to discuss -- if

24   there were particular requests that needed to be narrowed, we

25   certainly would have been willing to engage in that discussion.

M8MKRAH1

1    We didn't hear back other than thank you, until Sunday evening,

2    when he filed this request to quash the subpoenas.

3            MR. MURRAY:  Let me just correct that.  They did

4    indicate if you want to talk, but then you indicated, we are

5    not withdrawing the subpoenas.

6            MR. REHN:  That's correct, we have no intention --

7            MR. MURRAY:  So let's waste time talking, you know

8    what I mean?

9            THE COURT:  No.  Tell me why these subpoenas — both

10   if, as, and when and the additional subpoena — are burdensome.

11   Like what scope of materials?  I assume you're looking through

12   these kinds of things anyway in preparation for trial, so tell

13   me, walk me through, exactly what the scope is of the materials

14   and why it's burdensome for you to respond to this.

15           MR. MURRAY:  Sure.

16           We're talking about cell phones.  They're saying any

17   and all cell phones from -- Thane, is it 2016 to 2020?

18           MR. REHN:  That's correct.

19           MR. MURRAY:  Four years of his cell phones, just a

20   shotgun blast, Judge.

21           THE COURT:  Okay, so let's stop there.  Do you want to

22   respond on the cell phones?

23           MR. REHN:  Your Honor, based on the government's

24   investigation, it's our understanding that the defendant did

25   most of his business on cell phone applications, like WhatsApp

M8MKRAH1

1    and Telegram, and so that's really what we're seeking here, is

2    any business-related communications on applications or text

3    messages like that.

4               THE COURT:  Were those not materials that you could

5    subpoena from the providers?

6               MR. MURRAY:  Yes.

7               MR. REHN:  No.  The materials like that are encrypted

8    on the application.  There's no way to get them via a warrant

9    or subpoena on anybody else.  The only custodian of records

10   like that would be the defendant.

11              THE COURT:  Walk me through how counsel and the

12   defendant can get that material and how long you think that

13   would take.  Like how do you do searches for that kind of thing

14   on the phones and how long should that take?  You're asking for

15   all the phones altogether, so you wanted to search the phones.

16              MR. REHN:  That's right.

17              THE COURT:  You're not asking for defense counsel or

18   defendant to search the phones.

19              MR. REHN:  That's correct, your Honor.  And, in part,

20   the reason we crafted a request like that, and I've done this

21   in other cases as well, is to make it actually less burdensome.

22   The defendant can just produce the phones, and we can search

23   them, and then that should take virtually no time if the

24   defendant is still in possession of the devices.

25              If, in the alternative, the defense would like to

M8MKRAH1

1    discuss their own review of the materials, we'd be happy to

2    engage in that discussion.  I don't anticipate that it would

3    take a significant amount of time for the defendant to review

4    his own text and WhatsApp and Telegram messages to identify

5    business-related communications.

6              THE COURT:  For a four-year period.

7              MR. REHN:  If there is an extremely large volume of

8    such communications, we are willing to hear that, and respond

9    and figure out a way to tailor the request, but we have no

10   reason to believe that that would be especially difficult, to

11   identify relevant communications.

12             MR. MURRAY:  On top of, Judge, I am still trying to

13   catch up with the 3500 material to be prepared for trial.  I

14   have five cooperating witnesses.

15             Am I correct, five cooperating witnesses?

16             MR. REHN:  I think that's correct.

17             MR. MURRAY:  I need to synthesize the statements they

18   made with each other.

19             THE COURT:  So when was the 3500 material -- I

20   understand there was an additional hundred or so pages --

21             MR. REHN:  That's right.

22             THE COURT:  -- produced more recently, but when was

23   the bulk of the 3500 material produced?

24             MR. REHN:  So for noncooperating witnesses, the

25   government has produced material on a rolling basis since the

M8MKRAH1

1    beginning, and that's any FBI 302s or other notes of interviews

2    with noncooperating witnesses.

3         The bulk of the cooperating witness materials were

4    produced on July 29th.

5         THE COURT:  And you have not reviewed those materials,

6    or are you talking about the new material?

7         MR. MURRAY:  Not all of it, Judge.  And, Judge,

8    please, bear with me, maybe I'm not as smart and intelligent as

9    these people, but what I have to do is, I write out what I see

10    are issues in their statements, and they're all talking about

11    each other.  So I'm looking for conflicts between them.  It's a

12    very difficult process.  It's not something you read once and

13    put it down and walk away.

14         THE COURT:  How much 3500 material is there?

15         MR. REHN:  With respect to these cooperating

16    witnesses, it's certainly in the hundreds of pages.  I don't

17    think it's more than that.  I certainly don't think it's

18    anywhere close to thousands of pages.  It's notes from a number

19    of cooperating witnesses over a period of time.

20         We have ourselves reviewed it to produce it.  I don't

21    think that it should take more than the amount of time that it

22    has since the time of trial.  If the Court wanted a precise

23    number of pagination, we can probably provide that in a few

24    minutes.

25         THE COURT:  Why don't you get that.  If you could have

M8MKRAH1

1    someone look at that, please.  I do want you to get together

2    and talk about if there's a way to limit the scope of the

3    subpoenas, and to assist in the burden of responding to them,

4    because it seems like that's your main objection, correct,

5    Mr. Murray?

6         MR. MURRAY:  At this point, to undertake that before

7    trial, or even as the trial is ongoing, it's just too

8    burdensome.

9         THE COURT:  Why don't you have that discussion, to see

10   if you can limit it, so that we can try and move forward.

11        And then let's walk through this one more time.  I

12   know it's hard to predict a trial — I recognize that — but if

13   we were to sit lengthy days, really how long this trial is

14   going to last.  And, again, my concern is ensuring that we have

15   interpreters that can translate throughout the course of the

16   trial.

17        So, walk me through again.  I think you had estimated

18   ten days on the government's case.  Is that accurate?

19        MR. REHN:  I think that's right, your Honor.  We're

20   hoping it will be less than that, but it will certainly go into

21   the second week.  It obviously depends on how long

22   cross-examination of certain witnesses takes, but it will

23   certainly go into the second week.

24        THE COURT:  Obviously, it is entirely up to your

25   client to decide whether or not to testify.  He has a

M8MKRAH1

1    constitutional right not to testify, but he is, of course, free

2    to do so, and that decision is up to him.  But since you

3    indicated that he is likely to do so, how long do you think the

4    defense case will last?

5         MR. MURRAY:  Judge, the problem I have with giving

6    that estimate is, my client has so much to say, but it's not --

7    I have a line of questions I want to go with, but I know he's

8    going to go off into his own zone, so I think it's going --

9         THE COURT:  Well, he's not allowed to give a

10   monologue.

11        MR. MURRAY:  Judge, I know that.  It's been painful,

12   and I love him, but trying to focus on the question and the

13   issue and the line of questions is difficult, and I've --

14        THE COURT:  What's your best estimate?  Again, I'm

15   only asking for scheduling purposes.

16        MR. MURRAY:  I think two days for him.  And then we

17   have -- of those other four witnesses, we're only intending to

18   call three.  The fourth one, we're not going to get him.  He's

19   in another country.

20        THE COURT:  I'm just going to turn back to the

21   government.  How long do you think it will take to review the

22   3500 material for the cooperating witnesses, the additional

23   discovery, and then respond to these subpoenas?

24        MR. REHN:  Your Honor --

25        THE COURT:  If you need a minute to sort through that,

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

M8MKRAH1

1   but I want as honest an assessment as you can give me,

2   recognizing the language barrier that Mr. Murray is presented

3   with.

4           MR. REHN:  Certainly, your Honor.

5           THE COURT:  I assume, Mr. Murray, you have a

6   translator who assists you.

7           MR. MURRAY:  I don't.  He speaks English, but he wants

8   to explain everything, and he goes on and on.  So I had

9   actually thought of getting a translator, but then you have to

10  speak to the translator, the translator speaks to him, he gives

11  an answer, and it goes back.  I said it will be quicker if I

12  just sit with him and talk with him.  And so I don't think it

13  would speed anything up doing it with a translator.

14          THE COURT:  Yes.

15          MR. REHN:  Would you like us to confer briefly with --

16          THE COURT:  I think that would be helpful if you can

17  confer about timing and present me an estimate of how long you

18  really think it will take for someone to review those

19  additional materials.  Also, see if you can limit the scope of

20  the subpoena in a way or try and work out an agreement, if

21  you're able to do so — again, that's, of course, up to you

22  all — as to how to narrow it in a way that could be productive,

23  and then let me know.  And I have been in touch with the

24  interpreters' office and the folks who deal with juries, and I

25  will try and see if there's a way for me to move this trial a

M8MKRAH1

1    few days, perhaps, but I want to make sure that that really is

2    giving the defense enough time.

3            MR. REHN:  Your Honor, that would pose some

4    significant challenges for our witnesses if we were to delay

5    the trial at all at this point.  We literally have witnesses

6    who are in the air.  These are victims who have agreed to take

7    time out of their schedules to come and testify.  So, even a

8    delay of a few days would be very, very burdensome on witnesses

9    in this trial.

10           We're happy to confer with defense counsel.  It's the

11   government's very strong position that the materials we're

12   talking about are well within the defense's ability to review

13   under the existing trial schedule.

14           THE COURT:  Why don't you talk about narrowing the

15   scope of the subpoena, why don't you confer about if any of the

16   new material relates to the witnesses who intend to testify,

17   whether it's today or tomorrow or the next day this week, let's

18   say, and let Ms. Cavale know when you're ready to speak again.

19   Let's try and work together and be productive to see what can

20   be done to move this case along.

21           MR. MURRAY:  I was under the impression that I

22   consented to the remote testimony.

23           MR. REHN:  There was one witness who, for health

24   reasons, is unable to travel, but the other witnesses are, in

25   fact, traveling to testify.

M8MKRAH1

1          MR. MURRAY:  I would have no objection to anyone that

2    was --

3          THE COURT:  In any event, that's beside the point at

4    this point.

5          So why don't you talk about if there's any way to

6    facilitate moving this trial along — again, narrowing the scope

7    of the subpoena, identifying the new 3500 material.  If it

8    doesn't relate, for example, to these witnesses at all,

9    obviously, Mr. Murray, you still need to review it, but any way

10   that you can assist so we can see how we can move this case

11   along more productively.  Okay?

12         MR. REHN:  Certainly, your Honor.

13         THE COURT:  Let me know when you're ready.  Thanks.

14         (Recess)

15         THE COURT:  Folks, I know you are still working

16   together, and that's fine, and I am encouraging that, but if

17   there are issues with the government's witnesses, I want you to

18   talk about that, too.  So one thing I want you to think about,

19   Mr. Murray, is, presumably, there's no reason that you can't,

20   for example, give an opening statement, you can choose a jury.

21   And you are nodding, just for the record.

22         MR. MURRAY:  Yes.

23         THE COURT:  So, what is it, for purposes of this week,

24   that you feel like you're not able to do?  I don't know who's

25   testifying — you guys all know that — but it may be that

M8MKRAH1

1    certain witnesses can testify this week, but maybe we don't sit

2    on Friday, and then you'll have a long weekend to prepare for

3    things coming up next week.  And I'm just going to note that

4    Mr. Murray is nodding again.

5        I want you to see if there's a way to work that out,

6    that we can accomplish as much we can, but, for example, if you

7    need that extra time to respond to the subpoena or look at the

8    3500 material — which, as you know, under the law, you're not

9    entitled to until the witness testifies on direct anyway — for

10    witnesses that are not testifying this week or tomorrow or the

11    next day, just sort of think about it that way.  It's just

12    making sure that you are prepared at every stage of the case

13    properly.

14        I'm just going to ask you to think that through as

15    you're discussing this.  I just wanted to add in that note.

16        MR. MURRAY:  Judge, I think we're doing well here.

17        They have indicated there's three cooperating

18    witnesses --

19        THE COURT:  If you can just speak into the microphone.

20    It can be difficult for us to hear.  Thank you.

21        MR. MURRAY:  They have indicated there are three

22    cooperating witnesses that they intend to call this week.  That

23    is my biggest concern.  I have two issues, Judge, two issues.

24        One is my duty to my client that I have to show him

25    everything.  It's my duty to my client because I take them at

M8MKRAH1

```
1     their word for a lot of this material, and I want to focus on

2     these cooperating witnesses and be prepared for that.  But I

3     also have a duty to my client, who wants to see everything.

4     Just hold that, put a pin in that.

5            We have been working well here, and they're giving me

6     advance notice as to who they're calling so that I could tailor

7     at least my preparation -- aside from having to review this

8     with my client, so I can tailor my preparation in advance of

9     these witnesses being called.

10           I would just ask one other courtesy, Judge, if you

11    wouldn't mind.  Given the makeup of how we're set up, if my

12    client has an issue or a question or something that he wants me

13    to ask that I'm not asking because we haven't had that time

14    to — here's my cross that I'm going through — would it be okay

15    if, when I'm questioning those witnesses, and I'm here, that he

16    could be near me and talk to me?  That may alleviate some of

17    the problem because, ordinarily, I will sit there and say,

18    look, this is where we're going to go, we're going to question

19    here, we're going to do this, we're going to do that.

20           THE COURT:  I don't mind if you bring his chair

21    closer.  I also don't mind if at any time, you just say, can I

22    have a minute, Judge, and you consult with your client and then

23    come back.  I'll absolutely give you all the flexibility you

24    need to consult with your client at any and all stages of this

25    case.  So that should not be a concern of yours at all.
```

M8M6RAH2

1          I know you were having productive discussions.  Why

2    don't you keep discussing it.  Again, the goal is to try this

3    as soon as we can, but I also want to make sure that I'm giving

4    you the time, Mr. Murray, to adequately prepare together with

5    your client.  So if we can work together in that effort, it

6    would be much appreciated.

7          So, just why don't you tell me, again, when to come

8    back in.

9          MR. REHN:  Thank you, your Honor.  We've actually been

10   having exactly that conversation --

11         MR. MURRAY:  Yes.

12         MR. REHN:  -- about a scheduling proposal to the Court

13   that would allow us to start today.  So we will hopefully have

14   something for you shortly.

15         THE COURT:  Okay, great.  Thank you.

16         (Recess)

17

18

19

20

21

22

23

24

25

M8M6RAH2

1          THE COURT:  All right.  How are we doing?

2          MR. REHN:  Your Honor, I think we've resolved most of

3     the issues in dispute, enough to proceed, and I can sort of

4     explain what our conversations have been.

5          We've discussed the government's witness schedule with

6     the defense, and we've agreed to call no more than three

7     cooperating witnesses this week, who we've identified to the

8     defense.  The first will be Anashon Kamalov, who will be called

9     no earlier than tomorrow afternoon.  The second will be

10    Sadullo Karimov, who will be called no earlier than Wednesday.

11    And the third will be Farrukh Khazratkulov, who will be called

12    no earlier than Thursday.

13         What we will propose to the Court is that the parties

14    go ahead and select a jury today and deliver openings, but then

15    we adjourn early, even if it's only 3:00 o'clock, whatever,

16    when we're done with that part of it.  We go ahead and adjourn

17    to give the defense some time to review the 3500 materials,

18    which will are limited, associated with those three witnesses.

19    The materials that were the subject of the motions,

20    specifically the iCloud account, doesn't pertain to any of

21    those three witnesses.  So we'll have a whole additional week

22    to review those materials.

23         The other thing we're proposing is that on Friday, we

24    have five witnesses who are scheduled to be here on Friday

25    morning only, but they're all quite short.  There may not be

M8M6RAH2

1     any cross.  So the direct is probably between an hour and

2     two hours total.  There's going to be very limited --

3                 THE COURT:  For all of them?

4                 MR. REHN:  For all collectively.

5                 THE COURT:  Collectively.

6                 MR. REHN:  They are witnesses who participated in a

7     single transaction who will be on and off quickly, and also two

8     government witnesses who will provide a little bit of overview

9     of certain government programs.  So we would propose only those

10    witnesses testify on Friday, and then the Court adjourn

11    probably for all of Friday afternoon, again, to give the

12    defendant time to review the remaining 3500 materials for

13    witnesses to be called the second week.  This will likely push

14    the trial into a third week.  We're hoping the government case

15    will still be within two weeks, but with the defense case, it's

16    now likely it will get pushed into a third week.

17                THE COURT:  Because we're not sitting on Friday, the

18    2nd, and there's Labor Day?

19                MR. REHN:  Exactly.  Exactly.

20                And, you know, it's a little bit more time than we had

21    anticipated, but it will ensure adequate time for the defense

22    to review all of the materials in advance of each witness who

23    testifies.

24                And then with respect to the subpoenas, we're

25    continuing to discuss the subpoenas.  The real issue here is

M8M6RAH2

1    the defense has informed us at a high level the defendant will

2    be testifying about particular dealings and transactions.  It's

3    the government's view that if the defendant is going to claim

4    there is documentation of these transactions, the government is

5    entitled to cross-examine on that documentation and see it and

6    if exists.  And so we have asked defense counsel to ascertain

7    whether the defendant intends to assert the existence of any

8    such documentation.  And that's really what the subpoenas are

9    focused at, at getting.  So we'll have a further discussion

10   about a more narrow request to the subpoenas after the defense

11   has had the opportunity to ascertain the answer to that

12   question.

13          Because the defendant is not likely to testify until

14   later, sometime toward the end of next week, we don't

15   anticipate that there's an issue right now with respect to the

16   subpoenas.

17          THE COURT:  Mr. Murray, does that all work for you?

18          MR. MURRAY:  Yes.  Again, I appreciate -- I have been

19   working very well with the government throughout this case and

20   the Court.  I would just ask a couple issues on top of that.

21          The government is making this request, all this

22   documentation, I had -- especially because of the constraints

23   of time -- not intended to offer any documentation.  I have no

24   burden to.  My client was going to testify about significant

25   transactions that the government are alleging there was some

M8M6RAH2

1    misconduct for illegal activity.  He is going to testify to

2    what happened.  I didn't want to get in a position where now

3    I'm presenting to this jury that I do have a burden of

4    persuasion and production when I don't.  He's the defendant;

5    they must prove everything.  I am not going to ask my client if

6    he had records of all this.

7            I suggested to the government, they want to ask him do

8    you have records of all this, as if to say he had a burden to

9    produce it.  And that's a very dangerous area to go, Judge.  If

10   he's testifying on direct about an event, and they want to ask

11   for documentation, I think that shifts the burden that my

12   client has a duty to produce it and a duty to persuade this

13   jury with it.  So I'm concerned about that issue.

14           THE COURT:  Just to clarify, are you concerned about

15   the government asking him that if he testifies, or are you

16   concerned more broadly about the subpoena?

17           MR. MURRAY:  They should not even be allowed to ask

18   that question because that presents a burden shifting issue.

19   It may confuse the jury that he has a burden to produce.  If I

20   don't produce it to them in discovery and I have no intention

21   on showing it at trial, there's no other reason to ask the

22   client, the defendant, if he has these records, unless to

23   suggest to the jury that he has a duty to produce these

24   records.

25           THE COURT:  I assume they're suggesting that his

M8M6RAH2

1    testimony is going to be perjurious, that he's lying.  But I'll

2    leave it to the government to respond.

3         MR. REHN:  That's exactly right, your Honor.  The

4    government obviously embraces that it has the burden in this

5    trial that a defendant has no burden whatsoever.  But if the

6    defendant chooses to testify, the government is entitled to

7    cross-examine him.  The government believes that any testimony

8    suggesting these were legitimate transactions would, in fact,

9    be false.  There's a large amount of evidence indicating that

10   the purpose of these transactions was money laundering and

11   there was no underlying legitimate business reason.

12        The government is fully entitled to cross-examine the

13   defendant on those issues and questioning whether the

14   defendant, in fact, had any documents relating to the

15   transactions he's claiming were legitimate would be appropriate

16   to impeach the defendant's testimony.  We would in no way be

17   suggesting that the defendant has any burden of proof in this

18   case, but we're entitled to cross-examine on these issues.

19        THE COURT:  If there's a limiting instruction,

20   Mr. Murray, that you'd like me to give, I'd be happy to

21   consider it at the appropriate time.  Why don't you think about

22   that?

23        For purposes of today, it seems like everyone is

24   comfortable with us proceeding, choosing a jury, having opening

25   statements, and then adjourning for the day if we even get that

M8M6RAH2

1  far, and then proceeding with the schedule that the government

2  laid out; is that accurate, Mr. Murray?

3          MR. MURRAY:  Yes, that is accurate, Judge.  I prefer

4  if we can open tomorrow, but that's fine if we have to do it

5  today.  I'll do it today.

6          One other question I want to ask you, Judge, my client

7  is using the interpreter, but he does speak English.  Now, I

8  communicate to him in English.  Do you have any rule or

9  requirement whether or not he can speak -- like, listen so we

10  know he understands the question, and then can he, at his

11  choice, speak in English or if he needs the assistance of the

12  interpreter, use the interpreter?  Do you have --

13          THE COURT:  During his testimony?

14          MR. MURRAY:  Yes.

15          THE COURT:  I'll think about that.  My immediate

16  response is to say it's up to him that if he wants to say,

17  look, I can speak English, I'd like to testify in English, and

18  then have an interpreter as sort of standby, to the extent

19  there's a word he doesn't understand, that he's free to do

20  that, and we can just make that clear to the jury.  I don't

21  have a problem with that.

22          Does the government have a problem with that?

23          MR. REHN:  No, your Honor.  We have some concern about

24  sort of switching back and forth from English to Uzbek, but if

25  the defendant is more comfortable testifying in English with

M8M6RAH2

1    the occasional assistance of an interpreter, we don't see a

2    reason to object to that.

3              THE COURT:  Okay.

4              MR. MURRAY:  I just want to make sure he hears all the

5    questions, and then if he can just answer it and wants to speak

6    English, just give him that option.

7              THE COURT:  Okay.  The last thing I'm going to say is

8    just going forward, once we have a jury, if there are issues

9    like this that can wait to another time, like the end of the

10   day or in the morning or during our breaks, I don't want to

11   keep the jury waiting.  I like to do as much as I can in

12   advance, but I don't like to keep the jury waiting.  So this is

13   the kind of thing, for example -- I don't fault you for asking

14   it, it's an important question -- but it can wait.

15             MR. MURRAY:  Yes.

16             THE COURT:  So --

17             MR. MURRAY:  No rush.

18             THE COURT:  But just to be clear, everyone is

19   comfortable proceeding today with the adjustments that have

20   been made on mutual consent?

21             MR. MURRAY:  Yes.  The government is advising me of

22   their batting order of witnesses, which will help me focus and

23   be prepared.  So I'm accepting of that.

24             THE COURT:  I'm glad to hear that, and you'll continue

25   to try to work out the issues with respect to the subpoenas,

M8M6RAH2

1    and if you can't, you'll let me know.

2              MR. REHN:  Yes, your Honor.

3              THE COURT:  All right.  Thank you.  So we will request

4    a jury.  We'll just see how long it's going to be.  I'm going

5    to ask a quick question.  I want to make sure I can pronounce

6    everyone's names.

7              You can be seated if you'd like.

8              I hope if I ever mispronounce someone's name, you'll

9    correct me.  I don't mean any disrespect if I do so.

10             So Mr. Rahmankulov, am I pronouncing your name

11   correctly?

12             THE DEFENDANT:  Yes.

13             THE COURT:  How do you pronounce your first name, sir?

14             THE DEFENDANT:  Djonibek.

15             THE COURT:  Djonibek?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And did I pronounce your last name

18   correctly Rahmankulov?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.  Good.  Thank you.  Let me just make

21   sure there are no other names.

22             Nerlande Pierre.  Am I pronouncing your first name

23   correctly?

24             MS. PIERRE:  Nerlande.

25             THE COURT:  Nerlande?

M8M6RAH2

1              MS. PIERRE:  Yes.

2              THE COURT:  Nerlande.  I apologize.  I'm having a lot

3    of trouble hearing.  Okay.

4              If you can pronounce the first name, Rohatoy?  If you

5    could pronounce that witness' name, or that individual's name?

6              MR. REHN:  That maybe better directed to the

7    defendant.  That's the defendant's spouse.

8              THE COURT:  Okay.

9              THE DEFENDANT:  Rohatoy.  It's my wife, she's sitting

10   here.

11             THE COURT:  Good morning.  So it's Rohatoy.  And could

12   you pronounce the last name slowly, please?

13             THE DEFENDANT:  Khudoynazarov.

14             THE COURT:  Alena Volynkina.

15             MR. REHN:  I believe it's Volynkina.

16             THE COURT:  Volynkina.  Okay.  Kristina Petroysan

17   Bitsadze.

18             MR. REHN:  I think it's Petroysan Bitsadze.

19             THE COURT:  Farrukh Khazratkulov.

20             MR. REHN:  That's correct.

21             THE COURT:  Sara Sakhrani.

22             MR. REHN:  Sara Sakhrani.

23             THE COURT:  Okay.  Theodore?

24             MR. REHN:  Vlahakis.  Vlahakis.

25             THE COURT:  And Mr. Nemstov, his first name is

M8M6RAH2

1    pronounced how?

2              MR. REHN:  Djamshed.

3              THE COURT:  Thank you.  I mean no disrespect.  I want

4    to make sure I pronounce everyone's name correctly.  So please

5    do correct me if I ever fail to do so.

6              So why don't we take a five-minute break, and we'll

7    choose a jury.

8              (Recess)

9              THE COURT:  Be seated.  Thank you.  Give me one

10   minute.

11             In light of our scheduling issue, should I tell the

12   jury that we're not sitting on September 2?

13             MR. REHN:  That's next Friday; is that correct?

14             THE COURT:  Yes.

15             MR. REHN:  A week from Friday?

16             THE COURT:  Yes.

17             MR. REHN:  Yes.  I mean, I think the government would

18   be willing to, but I think --

19             THE COURT:  Does that affect you either way,

20   Mr. Murray?

21             MR. MURRAY:  No, it doesn't.  In my opinion, it

22   doesn't.

23             THE COURT:  All right.  Thank you.  I think I'll tell

24   them if they want to sit on the 2nd, to sit for a half a day,

25   but we'll leave that to the jury.  Is that okay with everyone?

M8M6RAH2

1                MR. REHN:  Yes, your Honor.

2                MR. MURRAY:  Yes, your Honor.

3                THE COURT:  All right.  We're ready.  Thank you.

4                (Jury selection under separate cover)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

M8M6RAH2

1          THE COURT:  Can you please swear in the jury now?

2          DEPUTY CLERK:  I'm going to ask you to please rise and

3     raise your right hand.

4          (A jury of 12 and 4 alternates was impannelled and

5     sworn)

6          DEPUTY CLERK:  Thank you.

7          THE COURT:  So, now, folks, what I'm going to do --

8     you can be seated.  This will take about ten more minutes, and

9     then Ms. Cavale is going to show you the jury room, and I'm

10    going to have let you go home.  You will go home for the day.

11    I wanted to give you some brief remarks so we can begin with

12    opening statements.

13          It will be your duty to find from the evidence what

14    the facts are.  That's going to be your job in this trial.

15    You, and you alone, are the judges of the facts.  From the

16    evidence presented at trial, you will decide what happened,

17    you'll then have to apply those facts to the law as I'll give

18    it to you.  You must follow the law as I explain it, whether

19    you agree with it or not.  Nothing I say or do during a trial

20    is intended to indicate what your verdict should be, so please

21    don't speculate as to what I may be thinking.

22          The evidence from which you will find the facts will

23    consist of the testimony of witnesses and documents, and other

24    things received in evidence.  The lawyers, may also agree or

25    stipulate to certain facts.  You are to accept those facts as

M8M6RAH2

true, although you must still decide the weight, if any, to be

given to those facts.  Certain things are not evidence and must

not be considered by you as evidence, and I'm going list them

for you now.

First, statements, arguments, and questions of the

lawyers are not evidence, nor are statements I make or

questions I ask of the witnesses.  Second, objections to

questions are not evidence.  Lawyers have an obligation to

their clients to make an objection if they believe that

evidence is improper under our Federal Rules of Evidence, but

you should not be influenced by an objection or my ruling on

it.

If the objection is sustained, the witness will not be

permitted to answer the question, and you must ignore the

question.  If the objection is overruled, the witness will be

permitted to answer, and you should treat the answer like any

other.

If you're instructed that an item of evidence is being

received for a limited purpose only, please follow that

instruction.  Third, if I strike an answer or instruct you to

disregard an answer, then that testimony is not evidence and

may not be considered by you.

Fourth, anything that you may see or hear outside the

courtroom is not evidence and must be disregarded for your

verdict.  It must be based solely on the evidence, or lack of

M8M6RAH2

1    evidence, presented here in this courtroom, in this trial.

2            One of your most important tasks will be to evaluate

3    the credibility of the witnesses who will testify here at

4    trial.  It will be up to you to decide which witnesses to

5    believe, which witnesses not to believe, and how much, if any,

6    witnesses' testimony to accept or reject.

7            I will give some guidelines for determining the

8    credibility of witnesses at the end of the trial.  But in the

9    meantime, please just listen carefully to the witnesses as they

10   testify, for you will be called upon to evaluate their

11   credibility and the truthfulness of their testimony.

12           It's important to remember that this is a criminal

13   case.  In such case, the government bears the burden of proving

14   each essential elements of the crimes charged beyond a

15   reasonable doubt.  The burden never shifts to the defendant for

16   the simple reason that the law presumes a defendant to be

17   innocent and never imposes upon a defendant in a criminal case

18   the burden or duty of calling any witnesses or producing any

19   evidence.

20           In other words, as to each charge against the

21   defendant, the defendant starts with a clean slate and is

22   presumed innocent until such time, if ever, as you as a jury

23   are satisfied that the government has proven the defendant is

24   guilty of that charge beyond a reasonable doubt.

25           Now, the question naturally arises:  What exactly is

M8M6RAH2

reasonable doubt?  The words almost define themselves.  It's a

doubt based on your reason, your judgment, experience, and

common sense.  It's a doubt that a reasonable person has after

carefully weighing the evidence.  Proof beyond a reasonable

doubt must therefore be proof of such convincing character that

a reasonable person would not hesitate to rely or act on it in

the most important of his or her own affairs.

I must emphasize that beyond a reasonable doubt does

not mean beyond all possible doubt.  It's practically

impossible for a person to be absolutely and completely

convinced of any disputed fact; that, by its nature, cannot be

proved with mathematical certainty.  In criminal law, guilt

must be established beyond a reasonable doubt, not all possible

doubt.

If after a fair and impartial consideration of all the

evidence you do have an abiding belief in the defendant's

guilt, a belief that you would be willing to act upon without

hesitation in important matters, in the personal affairs of

your own life, then it will be your sworn duty to convict the

defendant on that count of the indictment.  If, however, you do

not have an abiding conviction of the defendant's guilt, if you

have such a doubt as would cause you to hesitate before acting

in matters of importance to yourselves, then you have a

reasonable doubt, and in that circumstance, it will be your

sworn duty to return a verdict of not guilty.

M8M6RAH2

1          You're going to be permitted to take notes during the

2     trial.  Ms. Cavale will give each of you a notepad and a pen.

3     I'm just going to ask you to write your name on a notepad.  If

4     you take notes, you don't have to, please do so only in these

5     pads, and don't remove the pads from the courtroom or the jury

6     room.  Just leave them in the jury room or give them to

7     Ms. Cavale every evening.

8          Remember that any notes that you do take, if you take

9     them, are to be used by you as an aid to your memory.  Your

10    memory controls.  If you do take notes, be careful not to get

11    so involved in taking notes that you're not listening to the

12    evidence.  Once you're in your deliberations, if there's a

13    disagreement between one juror's notes and another juror's

14    notes or between one juror's notes and another juror's

15    recollection, you can ask to have the court reporter read back

16    the testimony for it's the official court transcript that

17    controls, not any particular juror's notes.

18         During the course of the trial, exhibits will be

19    received into evidence.  They will be marked with an exhibit

20    number.  If there's an exhibit you're particularly interested

21    in seeing, you should feel free to write it down, and you can

22    ask to see the exhibit once you're in deliberations.  However,

23    at the end of the trial, I'll provide you with a list of all

24    the exhibits received in evidence as well as a list of all the

25    witnesses who testified, so you needn't make notes in order to

M8M6RAH2

1    keep track of the exhibits or the witnesses.

2              We're going to begin the trial tomorrow morning.  In

3    this trial, we will sit generally Mondays through Fridays.  I

4    already told you that we may not sit on the Friday before

5    Labor Day and will not be sitting on Labor Day, and we

6    generally begin, unless I tell you otherwise, at 10:00 a.m. and

7    continue to 5:00 p.m.

8              Please plan to arrive by 9:45 each day.  As an

9    incentive, I'm going to have breakfast waiting for you.  We

10   can't start until all of you are here.  So if you're late, then

11   all of us -- the lawyers, the court reporter, the witnesses,

12   the parties, and your fellow jurors -- will have to wait, so

13   I'm going to ask to you please be on time.

14             I'm going to just tell you briefly how the trial will

15   proceed, and then I will adjourn for the evening.  We're going

16   to have opening statements, as I mentioned, first thing

17   tomorrow morning.  The government's attorney will make an

18   opening statement, and then the defendant's attorney may make

19   an opening statement if he chooses to do so.

20             The opening statements are neither evidence nor

21   argument.  They're simply outlines of what the attorneys'

22   believe the evidence will show, and they'll be given to help

23   you follow the evidence as it's presented.

24             After the opening statements, the government will

25   present its case.  The government will call its witnesses, and

M8M6RAH2

1    after each witness testifies on direct examination, counsel for

2    the defendant will have an opportunity to cross-examine those

3    witnesses, and after cross-examination, there may be a little

4    bit of what we call redirect and recross.

5              Following the government's case, it will rest.  The

6    defendant may then present a defense case, if he chooses to,

7    and counsel for the government will have the opportunity to

8    cross-examine any witness testifying for the defendant.  But as

9    we discussed, it's important to remember that in a criminal

10   case, such as this, a person charged with a crime has

11   absolutely no burden to prove that he's not guilty.  If the

12   defendant chooses not to present any proof, that decision

13   cannot be held against him in any way and may not enter your

14   deliberations at all.  I'll instruct you again on the burden of

15   proof after all the evidence has been received.

16             After the presentation of evidence is complete and

17   both sides are rested, the attorneys will deliver their closing

18   arguments to summarize and interpret the evidence.  Just as the

19   lawyers' opening statements are not evidence, their closing

20   arguments are not evidence either.

21             Following closing arguments, I'll give you

22   instructions on the law, and you will then finally retire to

23   deliberate on your verdict, which must be unanimous and must be

24   based on the evidence presented at trial.

25             You have a tremendously important task as jurors.

M8M6RAH2

1   It's to determine the facts.  You, and you alone -- not the

2   Court -- you and you alone are the sole judges of the facts.

3   The Constitution itself recognizes your unique role in our

4   system of justice.  So I'm going to ask you to pay careful

5   attention to the witnesses and my instructions on the law.

6           And then there's just one other thing that I want to

7   make sure that you know, and that is that from this point on,

8   it's your duty not to discuss the case at all.  And I know I

9   mentioned this a little bit before the lunch break, and that

10  includes the information that I have said thus far, that you've

11  heard thus far, and that includes to your family and friends.

12  You can tell people in your life that you've been chosen to sit

13  on a criminal jury, but you may not talk about the substance of

14  the case in any way, and that applies equally to communications

15  made in person or by virtue of tools of technology.  You must

16  also remain outside of the presence of those who may be

17  discussing the case.  So until you retire to the jury room at

18  the end of the case to deliberate, you're simply not to talk

19  about the case, again, even with each other.

20          In that regard, please understand that the parties and

21  counsel in this case have been instructed to have no contact

22  with any of you.  So if you happen to see someone outside in

23  the hallway and they don't acknowledge you or say hello, don't

24  take offense.  They're not being rude.  They're just following

25  my instructions.

M8M6RAH2

1          Further, unless and until you're excused as a juror,

2    you should not attempt to gather any information at all

3    relating to the case.  Don't engage in any reading on the case.

4    Don't attempt to visit places that might be mentioned.  Don't

5    use the Internet, whether it's Google, Facebook, Twitter, or

6    any other social media site, to learn anything about the case

7    or cases like it or any of the participants in the case.  If

8    you inadvertently come across a news report relating to this

9    case, as I think I mentioned earlier, just stop reading, stop

10   listening, stop watching, and tell Ms. Cavale.  Don't even tell

11   your fellow jurors.

12          If at any time during the course of the trial anyone

13   attempts to talk to you or communicate with you about the case,

14   either in or outside the courthouse, again, please just

15   immediately report it to Ms. Cavale, but don't tell anyone

16   else, including your fellow jurors.

17          Finally, if at any time someone you recognize comes

18   into the courtroom, just let Ms. Cavale know, and if it's

19   literally during court, you can just raise your hand and we can

20   take a break.

21          The reason I give these instructions is that you must

22   decide the case based solely on the evidence introduced at

23   trial and not based on anything else you might learn from

24   outside sources.  So I'm just going to ask you to keep an open

25   mind throughout the trial, reserve judgment until all of the

M8M6RAH2

1    evidence is in, and you've been instructed on the law, and

2    heard closing arguments.  Until you've heard all of the

3    evidence and closing arguments, my instructions, you're really

4    not going to be in a position to reach any conclusions in this

5    case, so do keep an open mind.

6         With that, I'm going to thank you.  I know it's been a

7    long day.  I hope you have a nice evening.  Ms. Cavale will

8    walk you out, but I'll see you all in the morning.  Thank you.

9         (Jury not present)

10        THE COURT:  Are there any applications or anything we

11   need to talk about before tomorrow morning?

12        MR. MURRAY:  Judge, I just wanted to ask, your Honor.

13   I just wanted to ask whether or not -- due my client's

14   financial situation, he's unable to pay for transcripts -- if

15   there was some way I can make an application that the CJA -- we

16   do it in state court with the 18B panel.

17        THE COURT:  18B panel requires that he fill out a

18   financial affidavit indicating that he doesn't have the

19   resources to hire an attorney.

20        MR. MURRAY:  Yes, Judge.  But quite often, they will

21   for experts or for transcripts.  The judges would approve that

22   when the client represents that his finances are exhausted.

23        THE COURT:  I mean, look.  He can fill out a financial

24   affidavit, and you can make an application to me but, again, it

25   doesn't normally happen when the lawyer is retained.  But if

M8M6RAH2

1   you want to make an application to me in that respect, you can

2   do so.  But, again, if he has the funds to hire an attorney,

3   I'm skeptical that he'll be able to represent that he doesn't

4   have the funds to order the transcript.  But, again, if his

5   circumstances have changed, for example, and you want him to

6   fill out a financial affidavit, making that request, I'll

7   entertain that.

8           MR. MURRAY:  Okay.  Thank you, your Honor.

9           THE COURT:  Any other applications?

10           MR. REHN:  Nothing from the government, your Honor.

11           THE COURT:  Okay.  Just generally get here at 9:45.

12   As I said previously, if there's ever a substantive issue any

13   of you want to raise, make sure to reach out in advance so we

14   can all meet early and not keep the jury waiting, which I don't

15   like to do.  But otherwise, you'll be here at 9:45.  We'll

16   start promptly with opening statements at 10:00.  All right?

17           How long are your opening statements, do you

18   anticipate?

19           MR. RAYMOND:  Approximately 15 minutes.

20           THE COURT:  Will you be giving it Mr. Raymond?

21           MR. RAYMOND:  Yes.

22           MR. MURRAY:  We'll work on that tonight.  I don't

23   think it's much longer.

24           THE COURT:  Okay.  Thanks.  Have a good evening.

25           (Adjourned to August 23, 2022, at 9:45 a.m.)